GLEUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIA KLEBER VASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondents. | Case No. 2:26-cv-02873-TMC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Before the Court is Petitioner Maria Kleber Vasquez's petition for writ of habeas corpus. Dkt. 1. Kleber Vasquez seeks immediate release from federal immigration custody, arguing that her current detention violates her constitutional right to procedural due process. *Id.* at 2–3. After considering her claim under the three-part test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court finds that Kleber Vasquez's re-detention under 8 U.S.C. § 1225(b)(2) after her humanitarian parole expired does not violate her right to procedural due process. Therefore, her petition for writ of habeas corpus is DENIED.

## II. BACKGROUND

Kleber Vasquez, a citizen of Ecuador, entered the United States on December 7, 2023. Dkt. 2 ¶¶ 2, 5. At the port of entry, U.S. Customs and Border Protection provided Kleber

Vasquez a Notice to Appear, charging her with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Dkt. 7 ¶¶ 5–7; Dkt. 8-2 at 2, 5. Kleber Vasquez was granted parole for a term of two years, expiring on December 7, 2025, pursuant to 8 U.S.C. § 1182(d)(5). Dkt. 7 ¶ 8.

Once paroled, Kleber Vasquez moved to Boise, Idaho and appeared at all her required check ins with Immigration and Customs Enforcement ("ICE"). Dkt. 2 ¶¶ 6–7. In 2024, Kleber Vasquez applied for asylum, later obtaining employment authorization, allowing her to work. *Id.* ¶¶ 8–9. On December 7, 2025, Kleber Vasquez's parole expired with no extension request. Dkt. 7 ¶ 9.

On March 7, 2026, Kleber Vasquez was arrested for a domestic violence offense and "resisting and/or obstructing an officer." *Id.* ¶ 10. She was held on bail at the Ada County Jail in Idaho. *Id.*; Dkt. 2 ¶ 13. An immigration detainer was lodged with the jail. Dkt. 7 ¶ 10; Dkt. 8-5 at 2. On June 4, Kleber Vasquez pled guilty to the misdemeanor offense of Disturbing the Peace and was sentenced to time served. Dkt. 2 ¶ 14; Dkt. 7 ¶ 11. ICE took Kleber Vasquez into custody upon her release from jail the next day. Dkt. 7 ¶ 12. She was eventually brought to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), where she remains detained. Dkt. 2 ¶¶ 4, 17.

On June 26, Kleber Vasquez was found removable as charged by an Immigration Judge ("IJ"). Dkt. 7 ¶ 13. On August 5, "the IJ denied all forms of relief and ordered [Kleber Vasquez] removed to Ecuador." *Id.* ¶ 14; Dkt. 8-8 at 2–5. Kleber Vasquez reserved appeal of the removal order. Dkt. 8-8 at 5. As of August 27, she had not yet appealed the IJ's decision to the Board of Immigration Appeals. Dkt. 7 ¶ 15. It is unclear from the record whether Kleber Vasquez appealed the removal order by the due date of September 4, 2026. *See* Dkt. 8-8 at 5.

This petition was filed on August 12. Dkt. 1. Federal Respondents (for simplicity, "Respondents") filed a return on August 27. Dkt. 6. Kleber Vasquez replied on September 1. Dkt. 9.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c)(3).

## IV. DISCUSSION

Kleber Vasquez argues that her right to procedural due process was violated because Respondents never provided her notice or an opportunity to be heard before a neutral decisionmaker prior to her re-detention. Dkt. 1 ¶¶ 26, 57. The Government disagrees, contending that Kleber Vasquez received the process she was due given her status at the termination of her parole. Dkt. 6 at 1–2.

The Government argues that when her term of humanitarian parole expired, Kleber Vasquez returned to her status as an arriving noncitizen at the threshold of the country, and that as "a noncitizen seeking initial entry to the United States," she had "'no entitlement' to *any* legal rights, constitutional or otherwise, other than those expressly provided by statute." Dkt. 6 at 8 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). While this may be true with respect to legal admission into the country, the Ninth Circuit has recently made clear that, as it has for generations, the Due Process clause protects all persons within the country's physical borders from arbitrary detention. *Padilla v. U.S. Immigr. & Cust. Enforcement*, --- F.4th ----, 2026 WL 2822044, at *16–19 (9th Cir. Sept. 21, 2026). As the circuit court explained,

"[u]nlike the political branches' plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century." *Id.* at *16 (footnote omitted). "In the immigration context specifically, rights against arbitrary detention have been frequently vindicated through the Due Process Clause, in recognition that '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.'" *Id.* at *19 (alteration in original) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). *Zadvydas* vindicated this principle by recognizing constitutional limits on the government's ability to detain even noncitizens who have final orders of removal. *Id.* "Although such individuals have no right to remain in the United States, they retain their constitutional rights regarding confinement." *Id.*

Similarly, while Kleber Vasquez's legal status regarding admission reverted to that of an arriving noncitizen once her parole expired, the Due Process clause continued to require constitutionally adequate procedures surrounding her detention. Despite their sweeping, incorrect argument about the reach of *Thuraissigiam*, Respondents appear to tacitly recognize this by analyzing the legality of Kleber Vasquez's detention under the *Mathews* test. *See* Dkt. 6 at 5–10; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."). Ultimately, the Court must analyze whether the mandatory detention provisions of 8 U.S.C. § 1225(b) violate the Due Process clause as applied to Kleber Vasquez. *Cf. Rodriguez Diaz*, 53 F.4th at 1213 (analyzing whether "§ 1226(a)'s procedures satisfy due process, both facially and as applied to Rodriguez Diaz").

Under *Mathews*, a court evaluates (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures

used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court will consider each factor, and the parties' relevant arguments, in turn.

**A. Liberty interest**

Kleber Vasquez argues that she has a strong liberty interest in freedom from detention, which can "only be revoked through methods that comport with due process," and should not be diminished because it was granted through parole or because the term of parole expired. Dkt. 1 ¶¶ 37–40. In response, the Government argues that Kleber Vasquez's liberty interest is diminished because, with parole, she has "the same liberty interest as a person who had been stopped at the border." Dkt. 6 at 6–7.

Kleber Vasquez was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) on December 7, 2023 for a two-year term. Under 8 U.S.C. § 1182(d)(5)(A),

> parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

In other words, those granted parole under 8 U.S.C. § 1182(d)(5) do not maintain a similar status to those admitted into the United States once their parole has been revoked or terminated.

This is part of a doctrine known as the "entry fiction." *See Padilla*, 2026 WL 2822044, at *12. "Where the entry fiction applies, 'aliens seeking admission into the United States may *physically* be allowed within its borders pending a determination of admissibility, but such aliens are *legally* considered to be detained at the border and hence as never having effected entry into this country.'" *Id.* (alteration omitted) (quoting *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (en banc)). The entry fiction currently "encompasses those apprehended at or

very near a point of entry and then either paroled into the United States or detained in the United States pending a determination of their admissibility. Such individuals are 'treated as if stopped at the border' with respect to certain legal rights." *Id.* at *13 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). Because of this doctrine, noncitizens like Kleber Vasquez whose parole expires do "not have due process rights '*regarding admission'* beyond those 'that Congress has provided by statute.'" *Id.* (emphasis added) (quoting *Thuraissigiam*, 591 U.S. at 140).

The two years of Kleber Vasquez's parole lapsed on December 7, 2025 without an extension. Kleber Vasquez's parole terminated automatically "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). At that point, "[a]ny further inspection or hearing" as to Kleber Vasquez's ability to remain in the United States was to "be conducted under section 235 or 240 of the" Immigration and Nationality Act ("INA"), *id.* § 212.5(e)(2)(i), and Congress has directed that Kleber Vasquez was to "be returned to the custody from which [she] was paroled," 8 U.S.C. § 1182(d)(5)(A). As an arriving noncitizen who was detained while seeking admission at a port of entry and released on parole, Kleber Vasquez is governed by 8 U.S.C. § 1225(b)(2), which "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 287, 297 (2018). Under the terms of the INA alone, Respondents were entitled to return Kleber Vasquez to mandatory detention under § 1225(b)(2) upon the expiration of her parole.

Kleber Vasquez argues, however, that doing so violates her Due Process rights because it ignores the life she built and the liberty she relied on during her two years in the United States, running "counter to the plain meaning of the Due Process Clause." Dkt. 9 at 4–6 (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). Courts in this district have recognized that release on humanitarian parole can establish a liberty interest in continued freedom from detention. *See*

*Flores Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases). Some of those decisions have concluded that a "continuation of humanitarian parole may be implied" "where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official." *Colmenarez v. Hernandez*, No. 2:26-CV-00845-GJL, 2026 WL 850535, at *3 (W.D. Wash. Mar. 27, 2026) (citing *Dieng v. Hermosillo*, No. 2:26-cv-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026)). Even so, there can be no implied continuation of parole in this case because Kleber Vasquez was returned to custody within a short time after the expiration of her two-year parole term. She was arrested three months after her parole terminated, and the Government issued an immigration detainer on the same day of her arrest. Dkt. 8-5 at 2. While Kleber Vasquez's liberty interest in her freedom was substantial, it was diminished by the fixed time she was granted for parole, the expiration of that time without seeking extension, and the government's prompt action to return her to custody when she was arrested shortly after her parole expired.

**B. Risk of erroneous deprivation**

Kleber Vasquez argues that this factor leans in her favor as there is a risk of erroneous deprivation of her liberty interest without a pre-detention hearing. Dkt. 9 at 10. Kleber Vasquez contends that a pre-detention hearing, where the Government must establish that she poses a flight risk or danger, is necessary to ensure that her re-detention is reasonably related to a valid government purpose. *Id.* In response, the Government argues that the risk is "minimal" because Kleber Vasquez's parole automatically terminated three months before her re-detention and her re-detention comports with the process required under 8 U.S.C. 1225(b)(2) and 8 C.F.R. § 212.5(e)(1). Dkt. 6 at 7.

At a minimum, due process requires the government to follow the procedures outlined in the statute and accompanying regulations that subject Kleber Vasquez to mandatory detention. "The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained." *Dieng*, 2026 WL 411857, at *8. Here, however, the Government followed those requirements. Kleber Vasquez was granted parole for two years, which, pursuant to 8 C.F.R. § 212.5(e)(1), automatically terminated on December 7, 2025. At that time, the Government was authorized to conduct any further removal proceedings under section 235 or 240 of the INA*, see id*. § 212.5(e)(2)(i), and to return Kleber Vasquez "to the custody from which [s]he was paroled": mandatory detention under 8 U.S.C. 1225(b)(2). 8 U.S.C. § 1182(d)(5)(A). The Government's prompt action to pursue removal and detain Kleber Vasquez within three months of her parole expiration complied with the statute and regulations. And although Kleber Vasquez does not receive an initial bond hearing under § 1225(b)(2), if her detention becomes unreasonably prolonged, the Due Process clause requires the Government to prove the basis for her ongoing detention by clear and convincing evidence. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019).

Under these circumstances, where the termination of parole was automatic and the Government did not acquiesce in Kleber Vasquez's ongoing liberty after her parole expired, the Court concludes that the existing statute and regulations sufficiently "mitigated the risk of erroneous deprivation." *Rodriguez Diaz*, 53 F.4th at 1209.

**C. The Government's interest**

With regards to the third factor, Kleber Vasquez argues that the Government's interest "in re-detaining [her] without a hearing is slight" because "nothing prevents the [G]overnment from detaining individuals while also providing procedural due process." Dkt. 9 at 14.

Respondents, in contrast, emphasize Ninth Circuit precedent recognizing the government's strong interest in enforcing immigration laws and carrying out removal orders. *See* Dkt. 6 at 9 (citing *Rodriguez Diaz*, 53 F.4th at 1208). Here, the Court finds that interest includes enforcing the humanitarian parole statute as written. The statute is meant to allow temporary physical presence as "an act of legislative grace," without "bestow[ing] . . . additional rights." *Padilla*, 2026 WL 2822044, at *12 (quoting *Mezei*, 345 U.S. at 215). The government's interest is weakened when it fails to act within a reasonable time upon the expiration of a noncitizen's parole. And Respondents must, at a minimum, comply with the process set forth in the statute; the Court agrees that "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 404–05 (E.D.N.Y. 2025) (citation modified) (first quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); and then quoting *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020)). But here, the Government complied with the statute and its own regulations, and it acted promptly to return Kleber Vasquez to custody when she was arrested by local authorities shortly after her parole terminated. As applied to Kleber Vasquez, these procedures did not violate the Due Process clause.

## V. CONCLUSION

Because Kleber Vasquez's detention under 8 U.S.C. § 1225(b)(2) after the termination of her parole does not violate the Due Process clause, the petition for writ of habeas corpus is DENIED.

Dated this 30th day of September, 2026.

Tiffany M. Cartwright
United States District Judge